Cyrus M. Sanai, SB#150387
SANAIS
433 North Camden Drive
Suite 600
Beverly Hills, California, 90210
Telephone: (310) 717-9840

Counsel for Exclusive Beauty Club, LLC

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

EXCLUSIVE BEAUTY CLUB, LLC, a Florida Limited Liability Company

Plaintiff,

vs.

RYMAX CORP, a New Jersey Corporation, dba RYMAX INC., AMERICAN INCENTIVES, and RYMAX MARKETING SERVICES; BRAINSTORM LOGISTICS, LLC, a New Jersey Limited Liability Company, dba LUXURY CLOSEOUTS and RYMAX INCENTIVE MARKETING; EVE KOLAKOWSKI, an individual; JESSICA BROWN, aka JESSICA RENTAS, an individual; DANIEL A. TABS, an individual; COSTCO WHOLESALE CORPORATION, a Washington State Corporation; MOSHE GREENWALD, an individual; BMY TRADING INC, a New Jersey Corporation; BMY GLOBAL SOURCING, INC, a New Jersey Corporation, dba BMY TRADING; BMY GROUP, a New Jersey partnership; and DOES 1 through 10, inclusive,

Defendants.

Case No.  19-cv-04677-R-JPR

**FIRST AMENDED COMPLAINT FOR:**

(1) FRAUD
(2) RELIEF UNDER FLORIDA RICO ACT, FLORIDA STATUTES CHAPTER 895
(3) RELIEF UNDER THE RACKETEER-INFLUENCED CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1964 ET SEQ;
(4) RELIEF UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 *ET SEQ.;*
(5) TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP

JURY DEMAND

COMPLAINT FILED ON

-1-
FIRST AMENDED COMPLAINT

Plaintiff Exclusive Beauty Club, LLC ("Plaintiff" or "EBC") hereby alleges as follows:

## JURISDICTION

1.      This court has jurisdiction under 28 USC §1331.  If and only if the federal cause of action is dismissed, in the alternative diversity jurisdiction is a secondary basis for jurisdiction.  Venue is proper in this district and Division because the goods at issue are at the time of filing of this complaint were located in Riverside County, California and the wrongful diversion of goods occurred in Riverside County, California.

## THE PARTIES

2.      Plaintiff, Exclusive Beauty Club, LLC ("Plaintiff" or "EBC"), is a Florida Limited Liability Company with its headquarters in Miami, Florida.  It is a distributor and retailer of skin care products for various manufacturers.  Exclusive Beauty Club is an authorized distributor of SkinMedica skin care products manufactured by a third party, Allergan plc and its subsidiaries ("Allergan").  This business relationship affords the Plaintiff both existing and future legal and contractual rights.

3.      Defendant RYMAX CORP ("Rymax Corp") is a New Jersey Corporation with its headquarters at 19 Chapin Road, Building B, Pine Brook, NJ 07058. It has registered the aliases RYMAX INC., AMERICAN INCENTIVES, and RYMAX MARKETING SERVICES.

4.      BRAINSTORM LOGISTICS, LLC ("Brainstorm LLC") is a New Jersey Limited Liability Company with its headquarters at 19 Chapin Road, Building B, Pine Brook, NJ 07058.  It has registered the aliases LUXURY CLOSEOUTS and RYMAX INCENTIVE MARKETING.

5.      Defendant EVE KOLAKOWSKI ("Kolakowski") is, and at all relevant times hereto was, the President of Rymax Corp.  She is a resident of New Jersey.

-2-

FIRST AMENDED COMPLAINT

6.      Defendant JESSICA BROWN aka JESSICA RENTAS ("Brown") is, and at all relevant times hereto was, the Senior Director of Luxury Goods and Gift Cards of Rymax Corp.  She is a resident of New Jersey.

7.      Defendant DANIEL A. TABS ("Tabs") is the general counsel of Rymax Corp and functions in that capacity for Brainstorm LLC.  He is a resident of New Jersey.

8.      Defendant COSTCO WHOLESALE CORPORATION is a Washington state corporation that owns and operates a chain of warehouse stores under the name "Costco."  Its headquarters are in Washington State.

9.      Defendant MOSHE GREENWALD ("Greenwald") is an individual residing in New Jersey.

10.     Defendant BMY TRADING INC is a New Jersey corporation with headquarters in New Jersey owned and controlled by Greenwald ("BMY Trading").

11.     Defendant BMY GLOBAL SOURCING, INC ("BMY Global") is a New Jersey Corporation with headquarters in New Jersey owned and controlled by Greenwald which has registered the corporate alias "BMY TRADING" with the state of New Jersey.

12.     Defendant "BMY GROUP" is a partnership comprising each of Greenwald, BMY Trading, and BMY Global.

13.     DOES 1-10 are persons whose identity and capacity is unknown to Plaintiff at this time.

## COMMON ALLEGATIONS

14.     THE RYMAX ENTERPRISE ("the RE") is an association-in-fact comprising Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10.

15.     The RE has two related activities.  The first activity is creating corporate incentive programs for businesses such as casinos to award goods to customers. These customers include Indian casinos in California and casinos in Las

FIRST AMENDED COMPLAINT

Vegas and New Jersey. In the course of operating this business, the RE must acquire a variety of consumer goods which are suitable as rewards or gifts, including luxury goods. This business operates as the cover for its second, more profitable business: acquiring luxury goods which are subject to restricted distribution arrangements, and diverting such goods into the "grey market" of the United States.

16.     Purchasing items for distribution into the grey market is unlawful if the goods are acquired by theft, fraud, or bribery. The RE acquires goods for distribution into the grey market by theft, wire fraud and mail fraud, using three related schemes. The first scheme is that one of the entities of the RE will acquire a large order of luxury goods for purported use in an incentive program directed at a business's customers, workers or suppliers. While some of the goods will be intended to be used for that purpose, the bulk will be immediately diverted to distributors and sales channels which are frequently forbidden by the manufacturer of the goods. The second scheme is that the RE will purport to be acting as agent for an undisclosed foreign buyer, and agree to purchase the goods for distribution in a country in which the manufacturer does not have a distribution network. In fact, the goods will not be acquired for export, but will quickly be diverted to a distributor or retailer in the United States which desires to sell these goods but is not authorized to do so. The third scheme is that the RE will act as an agent for a bona-fide third party to purchase goods, obtain approval for such third party to purchase the goods, then RE will steal the goods from the third party and resell them.

17.     In order to obscure the origins of the goods illegally diverted into the grey market, the RE utilizes the services of a title launderer. In the transactions described below, the BMY Group served as the title launderer. A title launder will act as a sham paper buyer and seller between the RE and the distributor or retailer purchasing the grey market goods.

18.     The shares and membership interests of Rymax Corp and Brainstorm LLC are split between Kolakowski and the founder of these entities, Marc Farbstein.

FIRST AMENDED COMPLAINT

Kolakowski is the President of both entities and the RE. Brown is the key person for acquisition of products for grey market diversion on behalf of Rymax Corp. New Jersey attorney Tabs is the general counsel of Rymax Corp and functions as the general counsel of the RE. In particular, Tabs advises on the use of Does 1-10 to conceal the distribution of goods acquired by Brainstorm LLC and provides additional misrepresentations and false statements to discourage litigation if the diversion of goods into the grey market is suspected. The other 44 employees of Rymax Corp and Brainstorm LLC both operate the legal side of the business of corporate gifts and incentives to corporate clients which award incentives, and facilitate the illegal and fraudulent diversion of goods into the grey market. In the performance of the fraud, Rymax Corp acts as the front for soliciting vendors to sell products either to Rymax Corp as a putative agent, or for the corporate incentive programs which Rymax Corp does operate. Brainstorm LLC purchases products from vendors and then, directly or through sales made to BMY Group or other title launders and then to a grey market purchaser, conducts the actual sales of goods.

19. On or about November 27, 2018 Plaintiff EBC was introduced to Kolakowski. At a meeting on February 14, 2019 at Carpaccio Restaurant at Bal Harbor Shops in Florida, Kolakowski orally represented to EBC owner Roger Baumann that Rymax Corp, as agent, represented a Chinese buyer for certain products distributed by EBC that are manufactured by the international drug behemoth Allergan under the brand name SkinMedica. SkinMedica is a line of skin care products the distribution of which in the United States is limited to authorized distributors. She represented that the buyer "was located in China" and would not distribute the products in the United States, but would instead sell the products on Chinese equivalents of Amazon, such as VIP.com, JD.com, Tmall.com and Taobao.com. Kolakowski also informed Baumann that the RE's contacts at Costco was also interested in the goods. Baumann explained that as a condition of the purchase of SkinMedica products, Allergan required that the goods be sold to

-5-

FIRST AMENDED COMPLAINT

international purchasers or certain limited US purchasers.  Moreover, Allergan explicitly required that for the time being that EBC's purchases not be directly or indirectly sold to Costco, Baumann told Kolakowski. Baumann explained that previously Allergan had disputes with Costco.  Any instance of such diversion would severely injure if not destroy EBC's relationship with Allergan.  Baumann told Kolakowski that EBC was required to obtain the approval of Allergan on this transaction.

20.    From February 15, 2019 to April 10, 2019, Kolakowski and Baumann continued to communicate by text.  Kolakowski repeatedly sought to convince Baumann to accept an order for Costco.  Baumann, who was already receiving other offers to sell SkinMedica products to Costco, repeatedly explained that no sales to Costco would be possible at that time due to Allergan's ongoing prior history with, and investigation of, Costco's acquisition of grey market SkinMedica goods.   The complete record of messages between them is as follows:

[2/15/19 11:47 AM] Baumann: Are you receiving my texts?

[2/15/19 11:48 AM] Eve Kolakowski: Yes, sorry. I've over scheduled yesterday and today. I got the photo last night. So late! Looking forward to meeting you wife!

[2/15/19 12:33 PM] Baumann: [emoji]

[2/15/19 12:33 PM] Baumann: I told her about you. Yes!

[2/19/19 9:01 AM] Baumann: Is this going outside the US?

[2/19/19 9:03 AM] Eve Kolakowski: In and outside US

[2/19/19 9:42 AM] Baumann: I don't really want anymore in Costco's web site

[2/21/19 4:26 PM] Baumann: I'll call you right back.

FIRST AMENDED COMPLAINT

[3/18/19 5:55 PM] Baumann: I have Costco calling me to do a trade. I don't trust them as you know. They throw everything online. Do you want to try and intercept this deal and tell Costco to put in stores only. Thought I don't trust them anyway. They want around 200,000 in skinmedica. Thoughts?

[3/18/19 7:04 PM] Baumann: Called you back

[3/20/19 8:17 PM] Baumann: Text me if you decide to come to Miami. I am open Thursday. [emoji]

[3/20/19 8:23 PM] Eve Kolakowski: Will do.  Good night.

[3/20/19 8:23 PM] Baumann: Cool

[3/22/19 8:35 AM] Eve Kolakowski: https://www.seattletimes.com/business/costco-emerges-as-consumers-e-commerce-favorite/

[3/22/19 8:35 AM] Eve Kolakowski: There's another one that I'm trying to find. I thought that I saved it.

[4/1/19 5:38 PM] Eve Kolakowski: Hey...Jess is trying to get info out of Marla for the order. I have a mid April in hands date. Are we going to swing the order and date?

[4/1/19 5:42 PM] Baumann: We are not addressing that order until April. Also, waiting to see if skinmedica still wants it. Their team did or will do a Costco but back soon to try and see who is selling to them. So we have to wait for that.

[4/1/19 5:42 PM] Baumann: Buy back

[4/1/19 5:43 PM] Eve Kolakowski: Ok. What does that mean exactly? I need to provide my customer with a delivery date.

[4/1/19 5:54 PM] Eve Kolakowski: I can make the purchase and accumulate and hold the product if that's what makes the most sense?

-7-

FIRST AMENDED COMPLAINT

[4/1/19 11:11 PM] Baumann: Tell them they have to wait

[4/1/19 11:11 PM] Baumann: No, stockpiling won't help

[4/2/19 2:44 PM] Eve Kolakowski: Hey...can you please call me when you get a chance today? I need to discuss the Costco order. I also have an order coming from China and 2 casinos have interest

[4/2/19 2:45 PM] Eve Kolakowski: Additionally let me know what we're doing with Clairsonic. I have interest in the product. Thanks.

[4/2/19 2:58 PM] Baumann: Ok. Call you soon

[4/2/19 2:59 PM] Baumann: Clarify, have not heard. Will follow up and see whats up.

[4/2/19 2:59 PM] Baumann: If we have orders for outside the us, we can do it. US Costco has to wait.

[4/2/19 3:01 PM] Eve Kolakowski: Ok. Give me a few days to get everything together.  China will be between 12k to 16k units.

[4/2/19 3:02 PM] Baumann: Okay

[4/2/19 3:02 PM] Baumann: Looking forward to the draft po

[4/10/19 8:15 AM] Eve Kolakowski: Good morning...hope all is well. I have additional orders coming for China and Australia early next week. How are we doing with the first China order? I need to

[4/10/19 8:16 AM] Eve Kolakowski: ship it prior to 4/30 or they hit me with penalties. Please update me or Jessica today. Thanks!

[4/10/19 12:14 PM] Baumann: I thought you said this first order is for Costco US?

[4/10/19 12:22 PM] Eve Kolakowski: No, I cancelled that based on your timetable. That was a $500k order at cost. The one that Jessica sent this week is China. It's around  $750k at cost. Should

-8-

FIRST AMENDED COMPLAINT

[4/10/19 12:22 PM] Eve Kolakowski: I not have cancelled Costco???

[4/10/19 12:23 PM] Baumann: Costco usa, yes, hold. China and Australia, let's do it.

[4/10/19 12:26 PM] Eve Kolakowski: Ok. So the order that you received this week is for China. I'm expecting additional orders from Australia and another beauty site in China next week. My drop

[4/10/19 12:27 PM] Eve Kolakowski: dead on this one is a ship date of 4/30. Can we make it happen?

[4/10/19 1:16 PM] Baumann: Will get back to you soon. In a meeting

[4/10/19 5:54 PM] Baumann: Easily can make that date. I spoke with Marla and I think we have a way to do this that makes Allergan happy and all of us. About to head out. Let's connect tomorrow. I can bother you or Jessica. You tell me.

21.     On April 11, 2019, Brown sent an email to, among others, Baumann, stating:

> Hope all is well. I just wanted to follow up on this PO. Can you please advise if it has been approved?

Baumann immediately replied to Brown, Kolakowski and others by email that:

> I have to speak with either you, Jessica, or Eve to get this order cooking. We have some logistics to discuss.
>
> Who is the person to speak with?

Brown stated by return email that she was the person to speak with.  Baumann left a message with Brown informing her that he needed additional proof that the customer was bona-fide and in China.

Brown sent an email to Baumann on April 11, 2019 asking

> Would a copy of the BOL work?

FIRST AMENDED COMPLAINT

22.     The next day, April 12, 2019, EBC executive Marla Wills sent an email to Jessica Brown asking the following question:

Thank you Jessica for the information.

Can you please confirm the final destination for this order is China?

Thank you!

Marla

On April 12, 2019, Jessica Brown replied as follows:

Hi Marla, correct.

Thanks!

23.     On April 17, 2019 Baumann wrote and dispatched an email to Brown and Kolakowski stating in relevant part:

Jessica,

Yes, a BOL would be helpful. Or a PO from the end buyer. Any supporting docs…..

I cant have this go to Costco, Skinmedica has been doing buybacks and tracking the products sold on Costco. I was contacted by SkinMedica yesterday from a different order that was re-routed to Costco ……

Anything that will help alleviate concerns is greatly appreciated. Eve has promised that this won't go to Costco USA, but if you can give me something that will provide additional support, that would be awesome.

Another idea to help remove any concerns is that we ship as we originally suggested. We can welcome your inspector and verify goods. Then, we can prep and ship to the end buyers. I can have my attorney create an affidavit or an agreement to protect from circumvention, but I promise I will not circumvent.

The concern stems from the fact that we see no SkinM for sale on JD, Tmall and Taobao. So, please help us with this.

-10-

FIRST AMENDED COMPLAINT

Thoughts?

24.    Plaintiff EBC and Allergan accepted the representations and supporting documentation from Brown and Kolakowski made on behalf of the Rymax Corp. that the goods for the first order would be shipped to China.  EBC reasonably relied on such representations in furthering the scheme of the RE.  The goods, listed in attachment B hereto (the "Shipment") were delivered to EBC's Miami office; Rymax staff was sent to EBC's office to inspect, reconcile and repackage the goods and then shipped them to New Jersey at their expense with their chosen shipper directly to Brainstorm LLC, in New Jersey, pursuant to the purchase order on April 24, 2019.  EBC placed five (5) GPS and cellular phone trackers in the Shipment packaging.  These trackers were not found by the RE team during repacking/shipping.  The Shipment was transported to the New Jersey offices of Rymax Corp and Brainstorm LLC on or about April 25, 2019.  The Shipment remained in New Jersey for approximately 22 days, then was trucked to California beginning on May 18, 2019.  The movements of the Shipment were recorded from Miami to New Jersey and finally to its ultimate destination by the trackers. After the Shipment was picked up from Miami, Brown requested fulfillment of a new order.  EBC demanded proof that the Shipment had been sent by sea to China.  Instead of sending a bill of lading, three days after the Shipment was picked up from the New Jersey offices of Rymax Corp and Brainstorm LLC, Brown emailed to EBC on May 21, 2019 a fake shipping reservation, attached hereto as Exhibit A, that was prepared by BMY Group at the request of Brown.

25.    The trip to California ended in Mira Loma, California, on May 23, 2019.  The trackers showed that the Shipment was delivered to a location inside, or just outside, the Mira Loma distribution center of Costco.  The undersigned counsel was engaged to address this matter and immediately called the general counsel of Costco on May 23, 2019.  Costco engaged the law firm of Greenberg Glusker to

FIRST AMENDED COMPLAINT

investigate.  On May 24, 2019 Greenberg Glusker's attorneys represented that Costco was the purchaser of the Shipment and stated that they believed that the goods were in Costco's possession.

26.     Even after being confronted with the diversion, Brown continued to lie to EBC about the diversion of the goods.  On May 23, 2019, Baumann emailed Kolakowski and Brown to inform them that the Shipment had been tracked to Mira Loma.  Brown wrote back by email to Baumann the same date that:

> Roger,
>
> We have contacted our client and are awaiting a response. We take these matters very seriously and will do what we can to get you answers as quickly as possible.
>
> Best,
>
> Jessica

27.     On May 24, 2019 Baumann emailed Kolakowski and Brown, informing them that Costco had confirmed it was the purchaser of the Shipment and demanding an explanation.  Brown emailed back on May 24, 2019 that:

> Hi Roger,
>
> Just wanted to touch base and let you know that I have yet to hear from our client. We are actively trying to reach them and will let you know as soon as we have an update.
>
> Thanks,
>
> Jessica

28.     After confirming that Costco had received the shipment on May 24, 2019, on May 28, 2019 Costco's attorneys at Greenberg Glusker  retracted that statement, stating that the Shipment was en route and expected on May 24, 2019 but had not arrived.  On May 29, 2019 Plaintiff filed this action, but based on the representations of Mr. Moss that Costco would not dispose of the Shipment,

FIRST AMENDED COMPLAINT

Plaintiff did not name Costco as a defendant or refer to it by name. On or about May 30, 2019 the Shipment was moved to warehouses in the vicinity of Ontario California. Greenberg Glusker, on behalf of Costco, promised in writing to hold the Shipment until at least June 7, 2019.

29. On June 6, 2019 the undersigned counsel spoke by telephone with Daniel Mazanec, a Florida based partner of the Greespoon Marder law firm representing the RE Defendants. Mr. Mazanec and the undersigned counsel agreed to request that Costco continue to hold the shipment until June 14, 2019, an extension of the June 7, 2019 deadline that Costco had set before it would dispose of the Shipment.

30. On June 6, 2019 Mr. Mazanec sent the following email to the undersigned counsel, Aaron Moss of Greenberg Glusker, Elizabeth Sbardellati, an associate at Greenberg Glusker:

Dear Mr. Moss and Ms. Sbardellati,

I represent the named defendants in the case of *Exclusive Beauty Club v. Rymax Corp., et al.*

I spoke with plaintiff's counsel Cyrus Sanai earlier today regarding possible resolution. Both sides intend to try and reach agreement on storage and disposition of the goods currently held by Costco as soon as reasonably practicable. As I am just getting up to speed in this matter, I believe we will require some additional time beyond tomorrow. Accordingly, Mr. Sanai and I jointly request that Costco agree to hold the subject goods for an additional week, with the hope that we will be able to arrive at a resolution sooner than that.

Please let us know if that is acceptable.

-13-

FIRST AMENDED COMPLAINT

Thank you,

Dan

31.     Due to the original agreement of Costco to hold the Shipment until June 7, 2019, and the extension of that date to June 14, 2019, Plaintiff refrained from filing a request for a temporary restraining order or motion for temporary injunction. On June 6, 2019 Elizabeth Sbardellati responded to the above email by replying to all recipients with the following:

Cyrus and Dan,

Thank you for your emails.  Costco confirms that it will continue to hold the subject goods for an additional 7-days (until June 14, 2019) while EBC and Rymax negotiate a resolution as to the storage and disposition of the goods. Costco further confirms that the goods are currently being held in a third party warehouse and are subject to Costco's control.  Costco will provide EBC and Rymax with the relevant contact information upon confirmation that a resolution has been agreed to if such information is necessary to the resolution.

-Liz

32.     On June 10, 2019 the undersigned counsel exchanged emails with Moss and Sbardellati concerning the mechanics of transferring joint control over the Shipment.  Unbeknownst to Plaintiff or its counsel, Costco had informed BMY Group and Rymax of the new location of the Shipment.  During the oral discussion with Mazanec on June 10, 2019, Mazanec maintained that Plaintiff and the RE were in conspiracy to defraud Allergan, and that this was demonstrated by text messages between Defendant Kolakowski and Baumann.  The undersigned counsel transmitted the messages, set out in relevant part in paragraph 20 above, to show that this was false.

-14-

33.     On June 11, 2019 Mazanec cut off settlement discussions with the undersigned counsel.  In violation of the written agreement of both the RE Defendants and Costco , Costco released the Shipment to BMY Group so that it could transport the Shipment to Brainstorm in New Jersey.  After repeated stonewalling, on January 13, 2019 Moss revealed in a telephone call to the undersigned counsel that Costco had released the Shipment to BMY Group in violation of its agreement.

## **FIRST COUNT**

### **FRAUD (COMMON LAW)**

(By Plaintiff EBC Against Rymax Corp, Brainstorm LLC, Kolakowski,  Brown and Does 1-10)

34.     Plaintiff EBC hereby incorporates, by this reference, paragraphs 1 through 33, inclusive, as if set forth in full.

35.     Kolakowski, as President of Rymax Corp and Brainstorm LLC, made the false oral representations set forth in paragraph 19 above orally; she further made the false written representations set forth in paragraph 20 above using the wire communications system of the United States.  Brown, as a Director of Rymax and executive of Brainstorm, made the false representation in paragraphs 22 above by email using the wire communications system of the United States.   EBC relied upon these representations, that the Shipment would be directed to China and not to Costco, in agreeing to sell the Shipment to Rymax and Brainstorm LLC as agents.  Allergan would not have sold the Shipment to EBC; EBC would not have bought the Shipment from Allergan;  and EBC would not have sold the Shipment to Rymax Corp/Brainstorm Logistics without this and other representations that this Shipment would not be sold to Costco.

36.     On May 21, 2019, Brown emailed to Baumann (with Kolakowski copied), the written booking confirmation showing that the goods were going to

-15-

Shanghai, China.   BMY Group, at the request of Brown, created a reservation to ship goods to Shanghai, China which was intended to induce EBC to sell the Shipment to Rymax Corp and Brainstorm LLC when it was the intention of Kolakowski and Brown to sell the Shipment to Costco through BMY Group.  The dispatch of the "reservation" attached hereto as Exhibit A by scanning and then emailing the documents was a use of the interstate wire communication systems.

37.     The reliance by EBC on the representations and documents provided by Kolakowski and Brown to EBC on behalf of Rymax, Brainstorm and the RE was reasonable.

38.     EBC suffered actual damages from relying upon the representations made by Kolakowski and Brown on behalf of Rymax Corp, Brainstorm LLC and the RE.  First, EBC's economic relationship with Allergan was and has been damaged and imperiled.  Second, the representations of Kolakowski and Brown caused EBC to accept an  effective price for the goods than they otherwise would have accepted, because Kolakowski convinced EBC that it had to accept a lower margin on sales to allow an equal share of the profit on the transactions between Rymax Corp and the fictitious Chinese client.  Therefore, the profit margin of the transaction was $50,000 lower than other potential exports of the Shipment that EBC might have engaged in rather than sell the Shipment to the RE.  Third, in order to preserve its relationship with Allergan, EBC was required to devote internal resources and funds to outside counsel in order to stop the sale of the Shipment to Costco.

39.     EBC is entitled to rescind the contract and forfeiture of the Shipment to EBC or to injunctive relief barring the sale of the Shipment to any person not approved by EBC and Allergan, to actual damages, to punitive damages, and to costs.  EBC is entitled to punitive damages because Rymax Corp, Brainstorm LLC, Kolakowski and Brown intentionally used fraudulent statements to deprive EBC of its property, namely the Shipment, in willful disregard of EBC's rights.

## SECOND COUNT

### RELIEF UNDER FLORIDA STATUTES CHAPTER 895

(By Plaintiff EBC Against Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10 inclusive)

40.     Plaintiff EBC hereby incorporates by this reference paragraphs 1 through 33 and 35 through 39, inclusive, as if set forth in full.

41.     The conduct of the Defendants Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10 violated Chapter 817 of Florida Statutes which are defined as "racketeering conduct" under Chapter 895.

42.     The RE is an enterprise that Rymax Corp, Brainstorm LLC, Kolakowski and Brown operated and conducted.  It engaged in a pattern of racketeering activity, that is to say "at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents."  Two incidents of fraud consisted of the fraudulent representations set forth in paragraphs 19, 20 and 22 above; and an additional act for fraud was the preparation by BMY Group of, and the transmission of, Exhibit A to EBC by Brown, alleged in paragraph 24.

43.     In addition, the statements by Kolakowski made in paragraph 19 above, the written representations made in paragraph 20 above, and the statement made by Brown made by email alleged in paragraph 22 each constituted a separate violation of Chapter 817.034 as part of a scheme to defraud.

44.     On May 29, 2019 Tabs wrote to EBC's counsel making further false representations to discourage the filing of this lawsuit.  In particular, Tabs wrote "Rymax did not create any fraudulent reservation.  Rymax provided your client with documentation that was provided to it."  Brown, Kolakowski and Tabs each knew

-17-

FIRST AMENDED COMPLAINT

that the reservation was fake, as it had been prepared by BMY Group at the request of Brown, and the Shipment had been picked up by truck destined to Costco in California three days before the reservation was emailed by Brown to Baumann (with a copy to Kolakowski).

45. The market value of the property at the time of the fraud was in excess of $700,000.00. Plaintiff has been injured by the pattern of racketeering activities conducted by the Defendants Rymax Corp, Brainstorm LLC, Kolakowski, Brown and Does 2-10. EBC requests injunctive relief against Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10, including an order dissolving Rymax Corp and Brainstorm LLC, an order returning the Shipment to EBC or restricting the disposition of the Shipment to person approved by EBC and Allergan, costs, reasonable attorney's fees, and other appropriate relief.

## THIRD COUNT

### RELIEF UNDER THE RACKETEER-INFLUENCED CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1964 ET SEQ;

(By Plaintiff EBC Against Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10 inclusive)

46. Plaintiff EBC hereby incorporates by this reference paragraphs 1 through 27, 29 through 32, 35 through 39, 41, and 43-44, inclusive, as if set forth in full.

47. Each of the statements identified above by Kolakowski and Brown on behalf of the RE in in paragraphs 19, 20 and 22 above, and the preparation by BMY Groip of, and the transmission of, Exhibit A to EBC by Brown alleged in paragraph 24, constitutes a separate "racketeering activity" under 18 U.S.C. § 1961(1), and in aggregate they constitute a "pattern of racketeering activity" under 18 U.S.C. § 1961(5). The RE is an "enterprise" under 18 U.S.C. §1961(4). Kolakowski maintains an interest in and controls the RE through which she engages in the above

-18-

FIRST AMENDED COMPLAINT

referenced pattern of racketeering activity.  Brown participates in the conduct of the RE's affairs through a pattern of racketeering activities, namely conducting wire fraud. Tabs participates in the conduct of the RE's affairs through a pattern of racketeering activities, namely conducting structuring the fraudulent sales through Does 1-10 and making false written representations through the interstate wire communication systems, i.e. wire fraud. Each of the RE, namely Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10 have violated 18 U.S.C. §1962 by causing the RE, an enterprise engaged in interstate commerce, to conduct or participate in such pattern of racketeering activity, and conspired to do so. Rymax Corp is the vehicle through which the RE establishes its credibility as a purchaser of large quantities of luxury products. Brainstorm LLC is the entity which purchases the goods and sells them to the grey market, either directly or by one or more sham sales through Does 1-10.

48.    Plaintiff  EBC has been injured by the pattern of racketeering activities conducted by the Defendants Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10, who are jointly and severally liable to Plaintiff for three times the amount of economic losses arising from the pattern of racketeering activities plus attorney's fees.

49.    The Defendants Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10 conducted the pattern of racketeering activity alleged above with malice and/or willful intent to deprive EBC of property, namely the Shipment, meriting punitive damages.

FIRST AMENDED COMPLAINT

## FOURTH COUNT

**VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, *et seq.***

(By Plaintiff EBC Against Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs, Costco, Greenwald, BMY Trading, BMY Global, BMY Group  and Does 1-10 inclusive)

50.    Plaintiff EBC hereby incorporates by this reference paragraphs 1 through 27, 29 through 32, 35 through 39, 41,  43-44, and 47 inclusive, as if set forth in full.

51.    The conduct of the Defendants Rymax Corp, Brainstorm LLC, Kolakowski, Brown and Does 1-10 was and will be unlawful business acts or practices because they repetitively violated, *inter alia,* 18 U.S.C. § 1343. *See* 18 U.S.C. §1962.

52.    The conduct of Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10 set forth above was and will be a fraudulent business act or practice because it was fraud that deprived EBC of the Shipment.  The conduct of Costco and Rymax Corp, Brainstorm LLC, Kolakowski, Brown and Tabs  of convincing Plaintiff to refrain from filing a temporary restraining order and preliminary injunction motion by entering into a sham agreement, proposed by Mazanec, the attorney for  Rymax Corp, Brainstorm LLC, Kolakowski, Brown and Tabs , whereby Costco would promise and represent that it would hold the Shipment until June 14, 2019, and then secretly release the shipment to the BMY Group for transportation back to Brainstorm was a fraudulent business act or practice.

53.    The conduct of the Defendants constituted unfair business practices.

54.    In engaging in conduct that constitutes unfair competition, Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs and Does 1-10 have acquired

-20-

FIRST AMENDED COMPLAINT

property from EBC and diverted it to Costco in California.   Costco then returned the Shipment to BMY Group for transportation back Brainstorm, instead of returning the Shipment to Plaintif.

55.    The aforementioned business practices of the Defendants are likely to continue and therefore will continue to violate the law and deceive the public.

56.    The market value of the property obtained by fraud from Plaintiff at the time of the fraud was in excess of $700,000.00.  The Defendants Rymax Corp, Brainstorm LLC, Kolakowski, Brown, Tabs, Greenwald, BMY Trading, BMY Global, BMY Group and Does 1-10 and Costco should be enjoined from engaging in future acquisitions of goods for diversion into the grey market.

57.    Costco has an established practice of obtaining goods through title launderers such as Greenwald, BMY Trading, BMY Global, BMY Group.  In this case, Costco was informed by the undersigned counsel of the absence of good title by its ostensible vendor, BMY Group, before Costco paid for or took possession of the Shipment.   Costco eventually received and took possession of the Shipment but did not pay for it. Costco, through its counsel, entered into two separate binding contractual commitments not to release the Shipment until after June 14, 2019, in exchange for Plaintiff's agreement not to sue Costco and seek preliminary relief against it.  This deception constituted an unfair business act or practice.

58.  Costco's purchasing of goods through title launders such as Greenwald, BMY Trading, BMY Global and BMY Group constitutes an unfair business practice.  Costco and any other Defendants acquiring possession of the Shipment should be ordered to restore the Shipment to EBC for further disposition as this Court may order.  Costco should be further enjoined from obtaining goods from unauthorized distributors or manufactures unless and until it has performed reasonable due diligence to confirm that the goods have not been obtained by fraud, theft, or violation of contractual obligations, and in particular it should be enjoined

-21-

FIRST AMENDED COMPLAINT

from acquiring any products sold by Plaintiff or its affiliates the identifying characteristics of which have been notified to Costco by Plaintiff unless given advance written permission by Plaintiff.

## FIFTH COUNT

## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP

(By Plaintiff EBC as against all Defendants)

59.     Plaintiff EBC hereby incorporates by this reference paragraphs 1 through 27, 29 through 32, 35 through 39, 41, 43-44, and 47, inclusive, as if set forth in full.

60.     Baumann orally informed Kolakowski that a transfer without Allergan's permission of any SkinMedica goods purchased from EBC to Costco and Costco's sale of such goods would severely injure if not destroy EBC's existing business relationship with Allergan.  Baumann informed Kolakowski and Brown in writing  that Allergan was hostile towards Costco and that  Allergan was monitoring SkinMedica sales by purchasing products and tracking the chain of sale to determine how products were being diverted.   Kolakowski orally  represented that any goods purchased by Rymax Corp as agent for this undisclosed principal would not be transferred to Costco.  Kolakowski and Brown represented in writing by email that the goods were destined for China.  These wrongful fraudulent representations by Kolakowski and Brown on behalf of the RE induced EBC to buy goods from Allergan and agree to sell them to Rymax Corp as agent for the undisclosed principal.  The representations of Kolakowski and Brown on behalf of the RE were made with the specific intention of damaging EBC's relationship with Allergan and with callous indifference to the injury the transfer of the Shipment to Costco would impose on EBC.

-22-

61.    Tabs advised Kolakowski and Brown to engage Greenwald, BMY Trading, BMY Global and BMY Group to launder title since such a sham transaction would assist in covering up the diversion of the Shipment and assist Costco in claiming the status of a bona fide purchaser for value without notice.  To act as a title launderer, Greenwald, BMY Trading, BMY Global and BMY Group purports to buy the product from a fraudulent acquirer such as Rymax/Brainstorm, and purports to sell it to Costco; however, Greenwald, BMY Trading, BMY Global and BMY Group never take possession of the goods and do not pay the fraudulent acquirer until after they have received payment from Costco.   Kolakowski and Brown informed Greenwald, BMY Trading, BMY Global and BMY Group that its services were needed to effectuate the sham transaction because the relationship between Plaintiff and Allergan would be damaged or destroyed once Allergan learned that additional goods purchased by Plaintiff were diverted to Costco. Greenwald, BMY Trading, BMY Global and BMY Group agreed to act as the title launderer, knowing that their actions would result in a chain of events that would damage or destroy the business relationship and expected business benefits of the relationship between Plaintiff and Allergan.  When Costco agreed to hold the goods, the RE defendants, through its counsel Mazanec, engineered a fraudulent promise from Costco to continue to hold the Shipment from June 7, 2019 to June 14, 2019, when the Shipment was in fact released to BMY Group on June 11, 2019.

62.    Costco's lawyers, both in-house and at Greenberg Glusker, were informed by the undersigned counsel that a transfer of the Shipment back to Rymax would injure the business relationship between Allergan and Plaintiff.  The undersigned counsel repeatedly told Costco's attorneys at Greenberg Glusker, in writing and orally, that if Costco transferred the goods back to Rymax, the goods would be put into the stream of commerce by Rymax.  The federal rules and federal statutory law allow a person in Costco's position, with competing claims of rights

-23-

FIRST AMENDED COMPLAINT

over goods, to interplead the goods into federal court.  Costco, though its attorneys Aaron Moss and Elizabeth Sbardellati, obtained the agreement of Plaintiff not to name Costco in its initial complaint or seek relief against Costco by promising to hold the Shipment through June 14, 2019.  Having caused Plaintiff to refrain from obtaining preliminary relief, Costco then, in breach of its written promise, and knowing the injury it would cause Plaintiff, intentionally and maliciously released the Shipment to BMY Group, and then declined to tell Plaintiff about this until Plaintiff had shown Costco a draft First Amended Complaint that named it as a defendant.

63.    Plaintiff is entitled to injunctive relief as against all Defendants for damages incurred from the injury to the business relationship between EBC and Allergan caused by the actions of Defendants, and to injunctive relief to prevent further injury.

**WHEREFORE,** Plaintiff EBC respectfully demands the following relief:

<u>On the First Count</u>

1.    Compensatory damages according to proof at trial;

2.    An award of punitive or exemplary damages;

3.    Reasonable costs incurred in this action.

<u>On the Second Count</u>

1.    An order dissolving Rymax Corp and Brainstorm LLC;

2.    An order returning the Shipment to EBC or restricting the disposition of the Shipment to person approved by EBC and Allergan and or a constructive trust over the Shipment;

3.    Costs, reasonable attorney's fees, and other appropriate relief.

-24-

FIRST AMENDED COMPLAINT

<u>On the Third Count</u>

1.   Compensatory damages according to proof at trial, tripled in accordance with 18 U.S.C. § 1964(c);

2.   An award of punitive or exemplary damages;

3.   Reasonable costs incurred in this action, including reasonable attorney fees pursuant to 18 U.S.C. § 1964(c).

<u>On the Fourth Count</u>

1.   For preliminary and permanent injunctive relief pursuant to Business & Professions Code Section 17203 and restraining and enjoining Defendants from continuing the violations acts of illegal, unfair, or fraudulent competition and requiring the Defendants to take any acts needed to prevent further violations, and in particular (a) barring the RE  from diverting SkinMedica products into the grey market (b) barring Costco from selling SkinMedica products acquired without due diligence as to whether the SkinMedica products have been diverted to Costco by fraud or violation of contractual rights and or selling such goods which have been so diverted, and (c) barring Greenwald, BMY Trading, BMY Global, and BMY Group from engaging in sham transactions where it buys products diverted from authorized sales channels and sells such products to Costco without taking physical possession of the goods and paying for them upon delivery;

2.   For an order requiring the Defendants to provide an accounting of all moneys which they may have received as a result of the acts and practices found to constitute unfair competition under Business and Professions Code Section 17200 *et seq.*;

FIRST AMENDED COMPLAINT

3.  For an order that the Defendants make restitution of the Shipment to EBC so that EBC can dispose of the Shipment in a manner consistent with Allergan's instructions, or injunctive relief restricting disposition of the Shipment by the RE Defendants to buyers approved by EBC and Allergan.

## On the Fifth Count

1.  Compensatory Damages;

2.  Punitive Damages;

3.  Injunctive Relief, in particular order that the Defendants make restitution of the Shipment to EBC so that EBC can dispose of the Shipment in a manner consistent with Allergan's instructions, or injunctive relief restricting disposition of the Shipment by the RE Defendants to buyers approved by EBC and Allergan, and/or a constructive trust over the Shipment; and

4.  Reasonable costs incurred in this action.

## As to All Causes of Action

1.  For costs of suit incurred herein;

2.  For such other and further relief as the Court deems just and proper.

Dated:  June 17, 2019

By:  /s Cyrus Sanai
       CYRUS SANAI
       SANAIS
       Attorney for Plaintiff

-26-

FIRST AMENDED COMPLAINT

Plaintiff demands a jury trial.

By:  /s Cyrus Sanai
     CYRUS SANAI
     SANAIS
     Attorney for Plaintiff

-27-

FIRST AMENDED COMPLAINT