1   AARON J. MOSS (SBN 190625)
    AMoss@ggfirm.com
2   ELIZABETH SBARDELLATI (SBN 293695)
    ESbardellati@ggfirm.com
3   GREENBERG GLUSKER FIELDS CLAMAN &
    MACHTINGER LLP
4   1900 Avenue of the Stars, 21st Floor
    Los Angeles, California 90067-4590
5   Telephone:  310.553.3610
    Fax:  310.553.0687
6
    Attorneys for Defendant
7   Costco Wholesale Corporation

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11  EXCLUSIVE BEAUTY CLUB,                Case No.  19-cv-04677-MFW-JPR
    LLC, a Florida Limited Liability
12  Company,                             [Assigned To:  Hon. Michael W.
                                         Fitzgerald]
13                     Plaintiff,
                                         **COSTCO'S NOTICE OF MOTION
14           v.                          AND MOTION TO DISMISS
                                         EXCLUSIVE BEAUTY CLUB,
15  RYMAX CORP, A New Jersey             LLC'S FIRST AMENDED
    Corporation, dba RYMAX INC.,         COMPLAINT; MEMORANDUM
16  AMERICAN INCENTIVES, and             OF POINTS AND AUTHORITIES
    RYMAX MARKETING SERVICES;            IN SUPPORT**
17  BRAINSTORM LOGISTICS, LLC, a
    New Jersey Limited Liability         [Proposed] Order filed Concurrently
18  Company, dba LUXURY                  Herewith
    CLOSEOUTS and RYMAX
19  INCENTIVE MARKETING; EVE
    KOLAKOWSKI, an individual;
20  JESSICA BROWN, aka JESSICA           Date:      September 30, 2019
    RENTAS, an individual; DANIEL A.     Time:      10:00 a.m.
21  TABS, an individual; COSTCO          Place:     Courtroom 5A
    WHOLESALE CORPORATION, a
22  Washington State Corporation;
    MOSHE GREENWALD, an                  Action filed on May 29, 2019
23  individual; BMY TRADING INC, a
    New Jersey Corporation; BMY
24  GLOBAL SOURCING, INC, a New
    Jersey Corporation dba BMY
25  TRADING; BMY GROUP, a New
    Jersey partnership; and DOES 1
26  through 10, inclusive,

27                     Defendants.

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 30, 2019 at 10:00 a.m. in Courtroom 5A of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Defendant Costco Wholesale Corporation ("Costco") will and hereby does move to dismiss the First Amended Complaint filed by Plaintiff Exclusive Beauty Club, LLC ("Plaintiff").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs' Complaint fails to state a valid claim for relief against Costco because it does not allege a cognizable claim under either California's Unfair Competition statute (Business & Professions Code section 17200 *et. seq.*) or for tortious interference with advantageous business relationship.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on August 5, 2019.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the [Proposed] Order submitted herewith, the other files, records, pleadings and papers in this action, any reply papers that may be filed in connection, and on such further oral or documentary evidence as may be presented at or before the hearing in this matter.

DATED:  August 16, 2019

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP


By:/s/ Aaron J. Moss
AARON J. MOSS (SBN 190625)
ELIZABETH SBARDELLATI (SBN 292695)
Attorneys for Defendant Costco
Wholesale Corporation

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................1

II.   STATEMENT OF FACTS..........................................................................2

III.   ARGUMENT ..............................................................................................4

    A.   Plaintiff Cannot State a Claim for Unfair Competition Against Costco...........................................................................................................4

        1.   Plaintiff's Unfair Competition Claim Arises from a Purely Private Contractual Dispute that has No Effect on Consumers or Competitors .......................................................4

        2.   Plaintiff's Unfair Competition Claim Also Fails Because Plaintiff has Not Alleged Facts Sufficient to Support Unfair, Unlawful or Fraudulent Conduct .................................6

    B.   Plaintiff Fails to State a Claim for Tortious Interference Against Costco.........................................................................................................10

        1.   Plaintiff's Tortious Interference Claim is a Thinly-Disguised Claim for Breach of Contract ................................10

        2.   Plaintiff Fails to Allege any Disruption in its Relationship with Allergan and/or any Economic Harm Caused by Costco ........................................................................................12

IV.   CONCLUSION .........................................................................................14

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

i

ANSWER TO FIRST AMENDED INITIAL COMPLAINT

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4 *AdTrader, Inc. v. Google LLC,*
    2018 WL 3428525 (N.D. Cal. July 13, 2018) .................................................. 12

5

6 *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,*
    790 F. Supp. 2d 1024 (N.D. Cal. 2011) ........................................................... 13

7 *Bardin v. Daimlerchrysler Corp.,*
    136 Cal. App. 4th 1255 (2006) ..................................................................... 8, 9

8

9 *Boland, Inc. v. Rolf C. Hagen (USA) Corp.,*
    685 F. Supp. 2d 1094 (E.D. Cal. 2010) ............................................................ 6

10 *Cel-Tech v. Communications, Inc. v. Los Angeles Cellular Telephone
    Co.,*

11   20 Cal. 4th 163 (1999) ...................................................................................... 8

12 *Citizens of Humanity v. Costco Wholesale Corporation,*
    171 Cal. App. 4th 1 (2009) ............................................................................... 8

13

14 *Committee on Children's Television, Inc. v. General Foods Corp.,*
    35 Cal. 3d 197 (1983) ........................................................................................ 4

15 *Dollar Tree Stores Inc. v. Toyama Partners LLC,*
    875 F. Supp. 2d 1058 (N.D. Cal. 2012) ............................................................ 5

16

17 *Ethan Allen, Inc. v. Georgetown Manor, Inc.,*
    647 So.2d 812 (Fla. 1994) ............................................................................... 13

18 *In re Webkinz Antitrust Litigation,*
    695 F. Supp. 2d 987 (N.D. Cal. 2010) .............................................................. 6

19

20 *International Star Registry of Illinois v. Omnipoint Marketing LLC,*
    510 F. Supp. 2d 1015 (S.D. Fla. 2007) ........................................................... 11

21 *IV Sols., Inc. v. Connecticut Gen. Life Ins. Co.,*
    2105 WL 12843822, (C.D. Cal. Jan 29, 2015) ................................................. 5

22

23 *JRS Prod., Inc. v. Matsushita Elec. Corp. of Am.,*
    115 Cal. App. 4th 168 (2004) ......................................................................... 11

24 *Khoury v. Maly's of California, Inc.,*
    14 Cal. App. 4th 612 (1993) ...................................................................... 11, 12

25

26 *Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003) .................................................................................. 12

27 *Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) ...................................................................................... 4

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

ANSWER TO FIRST AMENDED INITIAL
COMPLAINT

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Linear Technology Corp. v. Applied Materials, Inc.*,
   152 Cal. App. 4th 115 (2007) ................................................................................5

*Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*,
   2018 WL 6190592 (C.D. Cal. August 7, 2018) ...................................................12

*Madrid v. Perot Systems Corp.*,
   130 Cal. App. 4th 440 (2005) ..............................................................................10

*National Rural Telecomm. Co-Op v. DirecTV*,
   319 F. Supp. 2d 1059 (C.D. Cal. 2003) .................................................................9

*National Rural Telecommunications Co-op. v. DIRECTV, Inc.*,
   319 F. Supp. 2d 1058 (C.D. Cal. 2003) .................................................................7

*Polymer Tech. Corp. v. Mimran*,
   975 F.2d 58 (2d Cir. 1992) ....................................................................................8

*Puentes v. Wells Fargo Home Mortgage, Inc.*,
   160 Cal. App. 4th 638 (2008) ................................................................................9

*Rosenbluth International, Inc. v. Superior Court*,
   101 Cal. App. 4th 1073 (2002) ..............................................................................5

*Sebastian Int'l v. Longs Drug Stores Corp.*,
   53 F.3d 1073 (9th Cir. 1995) .................................................................................8

*Shroyer v. New Cingular Wireless Services, Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ...............................................................................7

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   93 Cal. App. 4th 700 (2001) ..................................................................................7

*St. Johns River Water Management Dist. v. Fernberg Geological
   Services, Inc.*,
   784 So.2d 500 (Fla. Dist. Ct. App. 2001) ...........................................................13

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) .............................................................................13

*Volvo Aero Leasing, LLC v. VAS Aero Services LLC*,
   268 So.3d 785 (Fla. Dist. Ct. App. 2019) ...........................................................12

*Watson Labs. Inc. v. Rhone-Poulenc Rorer, Inc.*,
   178 F. Supp. 2d 1099 ............................................................................................9

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ....................................................................... passim

Cal. Bus. & Prof. Code § 17203 ...............................................................................10

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

iii

ANSWER TO FIRST AMENDED INITIAL
COMPLAINT

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         This case primarily involves a dispute between Plaintiff Exclusive Beauty

4    Club ("Plaintiff") and defendant Rymax Inc. ("Rymax"), Rymax's individual

5    principals, and its affiliate Brainstorm Logistics, LLC ("Brainstorm") (collectively,

6    the "Rymax Defendants"). Plaintiff claims that it sold Rymax certain SkinMedica

7    branded products based on the Rymax Defendants' representations that these goods

8    would be sold in China, but that Rymax instead shipped the goods to an

9    intermediate seller, defendant BMY Group ("BMY"), who then shipped them to

10   Costco. There is no allegation that Costco was aware of any purported conditions

11   on the sale at the time it acquired the goods. Costco did not sell any of the goods

12   (or even put them into its inventory) but instead, when notified of the dispute

13   between Plaintiff and the Rymax Defendants, decided to hold the goods while the

14   parties attempted to resolve their dispute.

15        Nevertheless, Plaintiff sued Costco in its First Amended Complaint ("FAC")

16   based on facts that arose long after the sale, namely Costco's agreement with

17   Plaintiff's counsel to hold the Shipment for two weeks, and its purported breach of

18   that agreement by releasing the goods three days early. Plaintiff alleges that Costco

19   allowed the products to be picked up by BMY and shipped back to the Rymax

20   Defendants. Based on this purported breach, Plaintiff has asserted claims against

21   Costco for statutory unfair competition (California Business & Professions Code

22   section 17200 *et seq.*) and tortious interference with Plaintiff's business relationship

23   with Allergan.

24        Whether or not Costco or its attorneys breached an agreement, Costco's

25   alleged breach of a single commercial contract between two private parties does not

26   implicate either the public or individual consumers as required by California's

27   unfair competition law ("UCL"). Nor does Plaintiff allege a cognizable "unlawful,"

28   "unfair" or "fraudulent" business act or practice under the UCL. Likewise, Plaintiff

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  does not state a claim for tortious interference. Plaintiff does not allege that Costco

2  has committed an "independent tort" separate from its alleged breach of contract,

3  and Plaintiff does not (and cannot) point to any actual disruption in its relationship

4  with Allergen or any other economic harm allegedly caused by Costco. For all of

5  these reasons, Plaintiff's FAC as to Costco should be dismissed without leave to

6  amend.

7

8  **II.    STATEMENT OF FACTS[1]**

9        Plaintiff is an authorized distributor of SkinMedica skin care products, which

10  are manufactured by third party Allergan plc and its subsidiaries (collectively,

11  "Allergan"). FAC ¶ 2. In early 2019, Plaintiff's principal, Roger Bauman

12  ("Bauman"), engaged in discussions with defendant Rymax and its president, Eve

13  Kolakowski ("Kolakowski"), about Rymax buying SkinMedica products from

14  Plaintiff and reselling them to other downstream distributors. FAC ¶ 19. Plaintiff

15  contends that Allergan required the products be sold to "international purchasers or

16  certain limited U.S. purchasers," and that "for the time being" the products not be

17  sold to Costco." *Id.*[2] In reliance on Rymax's representations that the goods for the

18  first order would be sold in China, Plaintiff shipped the SkinMedica Products (the

19  "Shipment") to the New Jersey offices of Rymax and its affiliate, defendant

20  Brainstorm, on April 25, 2019. FAC ¶ 24.

21        Plaintiff placed GPS and cellular tracking devices in the Shipment

22

23  ---

[1] Costco accepts Plaintiff's allegations as true for purposes of this motion only.

24  [2] While Plaintiff asserts that any sales to Costco would "severely injure if not
25  destroy Plaintiff's relationship with Allergan" (FAC ¶ 19), Bauman's text messages
with Kolakowski as quoted in the FAC reveal that Plaintiff was not opposed to
selling SkinMedica goods to Costco at the appropriate time or under certain
26  conditions, such as not selling in e-commerce. For example, on March 18, 2019,
Bauman sent a text message to Kolakowski stating "Do you want to try to intercept
27  this deal and tell Costco to put in stores only[?]" FAC ¶ 20. In another text
message to Kolakowski on April 10, 2019, Bauman wrote "I thought you said this
28  first order is for Costco US?" FAC ¶ 20.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

packaging.  FAC ¶ 24.  Using these monitoring devices, Plaintiff determined that the Shipment remained in New Jersey for approximately 22 days and was then transported to a location near the Costco distribution center in Southern California on May 23, 2019.  FAC ¶ 25.  On May 29, 2019, Plaintiff filed a lawsuit against the Rymax Defendants.  FAC ¶ 28.  On May 30, 2019, following discussions with Plaintiff's attorney, Costco agreed to hold the Shipment (which was at that point housed in warehouses located in Ontario, California) until at least June 7, 2019. FAC ¶ 28.  Costco subsequently agreed to hold the Shipment until June 14, 2019 for the purpose of allowing Plaintiff and the Rymax Defendants to try to reach agreement on the storage and disposition of the Shipment.  FAC ¶¶ 30-31.  Plaintiff alleges that on June 11, "in violation of [its] written agreement," Costco released the Shipment to defendant BMY, the intermediate seller between Rymax and Costco in the chain of distribution.[3]  FAC ¶¶ 17, 33.  The Products were then shipped to defendant Brainstorm, an affiliate of Rymax.  FAC ¶ 33.

Plaintiff does not allege that Costco knew any of the conditions allegedly imposed on the Shipment prior to receiving the goods, nor does it allege that Costco ever placed any of the products in the Shipment in inventory, or ever sold or offered for sale any of those products.  It is undisputed that that the Shipment is no longer in Costco's possession, custody or control.

Plaintiff alleges various causes of action against the Rymax Defendants, contending that Plaintiff would not have sold them Allergan products had it known that the Shipment would be sent to Costco instead of distributors located in China. FAC ¶ 35.  Plaintiff has also filed a motion for preliminary injunction to prevent Rymax and Brainstorm from selling or otherwise disposing of the Shipment

---

[3] If necessary, Costco will demonstrate at the appropriate time that the release of the goods was the result of a miscommunication by a warehouse agent, and not any intentional act on Costco's part.  Costco will also demonstrate that it repeatedly attempted to get Plaintiff and the Rymax Defendants to hold the Shipment at a neutral location, instead of under Costco's control, but that they refused to do so.

pending resolution of this lawsuit.  Dkt. 16.  As against Costco, Plaintiff has alleged two causes of action: (1) Violations of Business & Professions Code section 17200 (Fourth Count) and (2) Tortious Interference with Advantageous Business Relationship (Fifth Count).  As discussed below, each of these claims is premised upon Costco's release of the Shipment on June 11 in breach of its alleged written agreement with Plaintiff to hold the products until June 14.

### III.   ARGUMENT

#### A.   Plaintiff Cannot State a Claim for Unfair Competition Against Costco.

##### 1.   Plaintiff's Unfair Competition Claim Arises from a Purely Private Contractual Dispute that has No Effect on Consumers or Competitors.

The purpose of California's Unfair Competition statute (Business & Professions Code section 17200 *et seq.*) is to address anticompetitive business practices and to protect the public from fraud, deceit and unlawful conduct. *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 209-210 (1983).  The statute focuses on actions taken against "consumers and competitors." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011). However, it is clear from the face of the FAC that the dispute between Plaintiff and Costco is based upon the alleged breach of a single agreement between two private business entities, and has nothing to do with any broader marketplace competitive impact on consumers or competitors.

Specifically, in support of its unfair competition claim against Costco, Plaintiff alleges:

- On or about May 30, 2019, Costco "promised in writing to hold the Shipment until at least June 7, 2019."  FAC ¶ 28.
- Costco subsequently agreed on June 6, 2019 to "continue to hold the subject goods for an additional 7 days (until June 14, 2019) while

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

1  EBC and Rymax negotiate a resolution as to the storage and

2  disposition of the goods."  FAC ¶ 31.

3  • "In violation of the written agreement of both the [Rymax]

4  Defendants and Costco, Costco released the Shipment to BMY

5  Group so that it could transport the Shipment to Brainstorm in New

6  Jersey." FAC ¶ 33.

7  • "Costco, through its counsel, entered into two separate binding

8  contractual commitments not to release the Shipment until after June

9  14, 2019, in exchange for Plaintiff's agreement not to sue Costco and

10  seek preliminary relief against it. This deception constituted an unfair

11  business act or practice." FAC ¶ 57.

12  Plaintiff does not, and cannot, allege any facts showing that Costco's breach

13  of its purported agreement with Plaintiff, and/or Costco's business practices more

14  generally, have an anticompetitive impact in the marketplace.

15  Courts consistently have rejected claims under section 17200 when they are

16  "based on a breach of contract that does not implicate the public in general or

17  individual consumers."  *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 875 F.

18  Supp. 2d 1058, 1083 (N.D. Cal. 2012).  *See also Linear Technology Corp. v.*

19  *Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) ("where a UCL action is

20  based on contracts not involving either the public in general or individual

21  consumers who are parties to the contract, a corporate plaintiff may not rely on the

22  UCL for the relief it seeks."); *Rosenbluth International, Inc. v. Superior Court*, 101

23  Cal. App. 4th 1073, 1077 (2002) ("a UCL action based on a contract is not

24  appropriate where the public in general is not harmed by the defendant's alleged

25  unlawful practices."); *IV Sols., Inc. v. Connecticut Gen. Life Ins. Co.*, 2105 WL

26  12843822, at *15-18 (C.D. Cal. Jan 29, 2015) (because the UCL "'was enacted to

27  protect . . . consumers and competitors by promoting fair competition,' the statute

28  simply was never meant to reach non-competitor, business-to-business disputes

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    flowing from negotiated agreements.") (internal citations omitted).

2        *In re Webkinz Antitrust Litigation*, 695 F. Supp. 2d 987 (N.D. Cal. 2010), is

3    illustrative.  In *Webkinz*, plaintiff retailers alleged that the defendant toy distributor

4    had violated section 17200 by failing to distribute toys in a "reasonably timely

5    manner."  The court characterized the "central issue presented under California

6    law" as "whether the public at large, or consumers generally, are affected by the

7    alleged unlawful business practice of defendants."  695 F. Supp. 2d at 998.

8    Granting defendant's motion to dismiss, the court found that plaintiff's claim was

9    essentially one for breach of contract and was "insufficient to establish the requisite

10   public or individual consumer interest as required under California law."  *Id*.

11       Plaintiff's claims likewise are based on the alleged breach of a single

12   commercial contract between two private parties – namely Costco's alleged

13   promise not to release the Products and/or its failure to hold the Products until June

14   14, 2019.  Accordingly, Plaintiff may not assert a claim against Costco under the

15   UCL.

16

17           2.    Plaintiff's Unfair Competition Claim Also Fails Because

18                 Plaintiff has Not Alleged Facts Sufficient to Support Unfair,

19                 Unlawful or Fraudulent Conduct.

20       The UCL claims also fail as a matter of law because a breach of contract can

21   violate section 17200 "only when the act is unfair, unlawful or fraudulent for some

22   additional reason" that is encompassed by the statute.  *Boland, Inc. v. Rolf C.

23   Hagen (USA) Corp.,* 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) (dismissing

24   section 17200 claim where "plaintiff has not provided evidence of, or even alleged,

25   the requisite additional wrongfulness.").  Plaintiff does not allege such conduct.

26       The terms "unlawful," "unfair," and "fraudulent" have been given specific

27   meanings by well-established case law, and under this law, Plaintiff's allegations

28   do not state a claim.

a.      Plaintiff Fails to Allege Any "Unlawful" Conduct.

The "unlawful" prong of the UCL proscribes "anything that can be properly called a business practice and that at the same time is forbidden by law." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001).  Practices that are forbidden by law do not include common law violations such as breach of contract.  *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1043-44 (9th Cir. 2010) (breach of contract "insufficient" to state a claim under section 17200).  *See also National Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1058, 1074 (C.D. Cal. 2003) (rejecting argument that alleging underlying breach of contract was sufficient to state claim under section 17200).  Plaintiff's claim arises from Costco's alleged breach of a contract to hold the Shipment and not from any independent practice forbidden by law.

The FAC also improperly attempts to bootstrap Costco's alleged breach of an agreement not to release the Shipment into a broader allegation that Costco's purchase of goods from "unauthorized distributors or manufacturers" constitutes an unfair business practice.  Buried within Plaintiffs' FAC is the assertion that "Costco should be enjoined from engaging in future acquisitions of goods for diversion into the grey market."  FAC ¶ 56.  Not only does this remedy bear no relationship to Costco's alleged breach of its agreement to hold the Shipment, it is unavailable as a matter of law.  Costco has the right to purchase products in the open market even if the manufacturer does not affirmatively "authorize" the purchases and even if the manufacturer or its distributors would prefer that Costco not sell the goods.  Indeed, in its Ex Parte Application for Jurisdictional Discovery, Plaintiff admitted that such a practice is "perfectly legal," stating that "Costco has created an elaborate product sourcing structure whereby it purchases products in the United States and abroad to resell in its warehouse stores at prices lower than authorized retailers. . . *This is perfectly legal*, so long as Costco did not act wrongfully or maliciously, and the goods were not stolen or obtained by fraud." Dkt. 41, p. 6:10-16 (emphasis added).

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

1    Here, there is no allegation of such conduct.

2         Courts have uniformly held that the resale of products purchased through

3    secondary market channels is legal, and that such practices actually encourage

4    marketplace competition, and have rejected attempts to limit the sale of goods to

5    authorized distribution channels.  The California Court of Appeal held, in a case

6    involving Costco, that "As a general rule, our society favors competition.  Once the

7    manufacturer has sold its goods to a distributor, the manufacturer can have no

8    control over the retailers to whom the distributor resells the goods."  *Citizens of*

9    *Humanity v. Costco Wholesale Corporation*, 171 Cal. App. 4th 1 (2009).  *See also*

10   *Sebastian Int'l v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995);

11   *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992).

12

13             b.       Plaintiff Fails to Allege Any "Unfair" Conduct.

14        "Unfair" conduct has been given a narrowly prescribed definition in the

15   context of the UCL.  In *Cel-Tech v. Communications, Inc. v. Los Angeles Cellular*

16   *Telephone Co.*, 20 Cal. 4th 163, 187 (1999), the California Supreme Court held that

17   "a business practice is 'unfair' only if it 'threatens an incipient violation of an

18   antitrust law, or violates the policy or spirit of one of those laws because its effects

19   are comparable to or the same as a violation of the law, or otherwise significantly

20   threatens or harms competition."  Plaintiff's FAC does not and cannot allege any

21   such violation.

22        There is no assertion that Costco and Plaintiff have any ongoing relationship

23   nor that Costco's one-time act of returning the Shipment to the Rymax Defendants

24   is a "business practice" that is "likely to continue."  Likewise, there are no

25   allegations that would support the wholly conclusory statement that Costco's acts

26   did or would "deceive the public."  *See Bardin v. Daimlerchrysler Corp.*, 136 Cal.

27   App. 4th 1255, 1274-75 (2006) (sustaining demurrer without leave to amend where

28   plaintiff claimed public was likely to be deceived, "without pleading any facts

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

71825-00317/3210675.6                           8                COSTCO'S MOTION TO DISMISS

1  showing the basis for that conclusion.").

2

3                    c.      Plaintiff Fails to Allege Any "Fraudulent" Conduct.

4          Plaintiff alleges that Costco committed a "fraudulent business act or practice"

5  in violation of the UCL by "promis[ing] and represent[ing] that it would hold the

6  Shipment until June 14, but then "secretly releas[ing]" the Shipment back to the

7  defendants.  FAC ¶ 52.

8          The term "fraudulent" as used in section 17200 "does not refer to the

9  common law tort of fraud" but rather "requires a showing members of the public

10  are likely to be deceived."  *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal.

11  App. 4th 638, 645 (2008) (internal citations omitted).  And "[i]n order to be

12  deceived, members of the public must have had an expectation or an assumption

13  about the" issue on which deception is claimed.  *Bardin v. Daimlerchrysler Corp.*,

14  136 Cal. App. 4th 1255, 1274-75 (2006).  Conduct "is judged by the effect it would

15  have on a reasonable consumer."  *Puentes*, 160 Cal. App. 4th at 645.

16          Plaintiff does not and cannot allege any facts to support an allegation that any

17  reasonable consumer would likely be deceived by Costco's alleged conduct.

18  Plaintiff is not a consumer and the return of the goods to the Rymax Defendants did

19  not impact members of the public.  *See Watson Labs. Inc. v. Rhone-Poulenc Rorer,*

20  *Inc.*, 178 F. Supp. 2d 1099, 1121 (it is "necessary under the 'fraudulent' prong [of

21  the UCL] to show deception to some members of the public, or harm to the public

22  interest, *and not merely to the direct competitor or other non-consumer party to a*

23  *contract*.") (emphasis added).  Here, Plaintiff has "not made a showing that the

24  public was impacted at all" by Costco's alleged contract with Plaintiff.  *National*

25  *Rural Telecomm. Co-Op v. DirecTV*, 319 F. Supp. 2d 1059, 1078 (C.D. Cal. 2003).

26  Plaintiff's claim therefore fails as a matter of law.

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

d.     Plaintiff's Proposed Relief is Unavailable as a Matter of Law.

The only remedies available for a violation of California's unfair competition law are restitution and injunctive relief.  *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 452 (2005); *see* Cal. Bus. & Prof. Code § 17203.  Neither is available here.  The Complaint does not (and cannot) explain what could be "restored" to Plaintiff by Costco, given that Costco is not alleged to possess any money or property belonging to Plaintiff.

There is therefore no basis for injunctive relief, let alone the blanket injunctive relief Plaintiff seeks: to enjoin Costco from legally purchasing goods in the secondary market and legally reselling those goods.

Plaintiff's proposed relief, while unavailable as a matter of law, underscores the importance of preventing Plaintiff from converting a garden-variety breach of contract claim into a claim for violation of California's unfair competition law.

B.     Plaintiff Fails to State a Claim for Tortious Interference Against Costco.

1.     Plaintiff's Tortious Interference Claim is a Thinly-Disguised Claim for Breach of Contract.

In its Fifth Claim for Relief, Plaintiff alleges that Costco tortiously interfered with Plaintiff's business relationship with Allergan, the manufacturer of the SkinMedica products that were the subject of the Shipment.[4]  The interference claim as to Costco is based solely on Costco's alleged breach of its purported agreement to hold the Shipment through July 14, 2019.  FAC ¶ 64.  Plaintiff claims that Costco shipped the goods back to Rymax's affiliate Brainstorm after being

---

[4] While labeled as "Tortious Interference with Advantageous Business Relationship," Plaintiff does not allege that Costco interfered with a particular existing contract with Allergen, as opposed to a "business relationship" that, at most, carried an expectation of prospective economic advantage. FAC ¶ 62.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  informed that such a transfer "would injure the business relationship between

2  Allergan and Plaintiff" and that Costco did so "in breach of its written promise" to

3  hold the Shipment.  FAC ¶ 62.

4  Under both California and Florida law,[5] a tort claim based on conduct

5  amounting to breach of contract cannot be stated without a showing of wrongdoing

6  independent of the breach itself.  *See JRS Prod., Inc. v. Matsushita Elec. Corp. of*

7  *Am.*, 115 Cal. App. 4th 168, 183 (2004) (a claim that sounds in contract "cannot be

8  transmuted into tort liability by claiming that the breach interfered with the

9  promisee's business."); *International Star Registry of Illinois v. Omnipoint*

10  *Marketing LLC*, 510 F. Supp. 2d 1015, 1026 (S.D. Fla. 2007) (dismissing claim for

11  tortious interference where plaintiff failed to establish that its claim for tortious

12  interference was an independent tort separate from breach of contract).

13  Here, Plaintiff has improperly attempted to convert its claim against Costco

14  into a tort without alleging any facts that Costco engaged in conduct independent of

15  its purported breach.  To the extent that the alleged breach actually interfered with

16  Plaintiff's business relationship with Allergan (which has not been alleged), this

17  would simply be an effect of the breach, not an independently wrongful act that

18  may sustain an interference claim.

19  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612 (1993), is on

20  point.  In that case, the California Court of Appeal affirmed the lower court's

21  sustaining of a demurrer, without leave to amend, to a claim based on defendant's

22  alleged breach of a distributorship contract with plaintiff.  *Id.* at 617-18.  Defendant

23  supplied beauty products to plaintiff, which in turn made these products available to

24

25  [5] Despite suing Costco in California and asserting a claim against Costco for
violation of California Business and Professions Code section 17200 in connection
with an alleged contract purportedly entered into in California and concerning the
26  storage of goods in California, Plaintiff's counsel claimed during the parties' L.R.
7-3 conference that Plaintiff's cause of action for tortious interference arises under
27  Florida law.  While Costco disagrees with Plaintiff's assertion that Florida law
applies simply because Plaintiff is domiciled in Florida, the claim fails under both
28  California and Florida law.

1   its downstream customers.  Plaintiff contended that defendant refused to sell him

2   products in breach of his distribution contract, and with the intention to ruin and

3   interfere with plaintiff's beauty and supply business.  *Id.* at 617.  Rejecting the

4   claim, the court held that "[t]he sole alleged conduct of respondent was the breach

5   of contract to supply the JPM products to appellant.  The effect on appellant's

6   customers (with whom respondent had no relations) and the damage to appellant's

7   business were simply consequences of breach of contract."  *Id.* at 618.  *See also*

8   *Macedonia Distrib., Inc. v. S-L Distribution Co., LLC*, 2018 WL 6190592, at *9-10

9   (C.D. Cal. August 7, 2018) (granting motion to dismiss claim for interference with

10  prospective economic advantage where the only alleged wrongful conduct was the

11  breach of the parties' contract).

13          2.      Plaintiff Fails to Allege any Disruption in its Relationship with

14                  Allergan and/or any Economic Harm Caused by Costco.

15          Even if conduct amounting to nothing more than a contractual breach could

16  serve as the basis for Plaintiff's claims against Costco (it cannot), Plaintiff's claims

17  nevertheless fail because Plaintiff has not alleged, and cannot allege, any disruption

18  to its relationship with Allergan and/or any damage to that relationship or to

19  Plaintiff, let alone that Costco was the proximate cause of such disruption.  *Korea*

20  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003); *Volvo Aero*

21  *Leasing, LLC v. VAS Aero Services LLC*, 268 So.3d 785, 789 (Fla. Dist. Ct. App.

22  2019).

23          To state a claim for tortious interference with prospective economic

24  advantage under California law, a plaintiff "must adequately allege actual

25  disruption of an economic relationship between the plaintiff and a third party."

26  *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *5-6 (N.D. Cal. July 13,

27  2018).  Courts within the Ninth Circuit have not hesitated to dismiss claims for

28  tortious interference based on the type of conclusory allegations present here.  *See*,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

1    e.g., *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008)

2    (dismissal of tortious interference claim affirmed where plaintiff did not allege that

3    it lost a contract with one of its customer or suffered any particular harm as a result

4    of plaintiff's alleged conduct); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,

5    790 F. Supp. 2d 1024, 1032 (N.D. Cal. 2011) (dismissing claim for tortious

6    interference where plaintiff did not "allege any particular lost contracts or failed

7    negotiations or even a failure to meet reasonable sales projections that can be

8    plausibly tied to [defendant's] actions.").

9         Likewise, under Florida law, although a plaintiff is not required to plead an

10   enforceable contract, "the alleged business relationship must afford the plaintiff

11   existing or prospective legal or contractual rights."  *Ethan Allen, Inc. v.*

12   *Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994) (internal citations

13   omitted).  Moreover, a "mere offer to sell…does not, by itself, give rise to sufficient

14   legal rights to support a claim of intentional interference with a business

15   relationship." *Id.* (internal citations omitted).  Instead, a plaintiff must show that the

16   defendant's interference caused the other party to "breach or sever [its] business

17   relationship with plaintiff."  *St. Johns River Water Management Dist. v. Fernberg*

18   *Geological Services, Inc.*, 784 So.2d 500, 505 (Fla. Dist. Ct. App. 2001).

19        Here, there are no allegations that Plaintiff's relationship with Allergan has

20   been disrupted or that Plaintiff has suffered economic harm because of Costco's

21   conduct.  Plaintiff has not alleged that Allergan ceased doing business with Plaintiff

22   as a result of anything Costco did or that Plaintiff's business relationship with

23   Allergan has suffered in any specific way.  It is undisputed that Costco did not sell

24   any of the goods contained in the Shipment.  Indeed, Plaintiff knows that the goods

25   are currently being held by Rymax, and filed an application for temporary

26   restraining order and motion for preliminary injunction to prevent their further

27   transfer.  Dkt. 16.  If Plaintiff has any legal right to recover the Shipment, this issue

28   will be adjudicated by the Court in this very action.

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590

## IV.   **CONCLUSION**

Because Plaintiff has not asserted, and cannot, assert a cognizable claim for unfair competition or tortious interference, the Court should dismiss the FAC as to Costco without leave to amend.

DATED:  August 16, 2019

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP


By:/s/ Aaron J. Moss
    AARON J. MOSS (SBN 190625)
    ELIZABETH SBARDELLATI (SBN
    292695)
    Attorneys for Defendant Costco
    Wholesale Corporation

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590